UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **TERI DRAKE,** individually and on behalf of all others similarly situated, <br><br> *Plaintiff*, <br><br> v. <br><br> **HIGHLAND HEALTH DIRECT LLC**, a Florida registered company, <br><br> *Defendant*. | Case No. <br><br> **CLASS ACTION COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Teri Drake ("Plaintiff Drake" or "Drake") brings this Class Action Complaint and Demand for Jury Trial against Defendant Highland Health Direct LLC ("Defendant" or "Highland Health Direct") to stop the Defendant from violating the Telephone Consumer Protection Act ("TCPA") by making telemarketing calls to consumers without consent including calls to phone numbers that are registered on the National Do Not Call registry ("DNC") and to consumers who have expressly requested that the calls stop. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Drake, for this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

### PARTIES

1. Plaintiff Drake is a resident of Ashland, Ohio.

2. Defendant Highland Health Direct is a company registered in Florida with its headquarters located in Deerfield Beach, Florida. Defendant Highland Health Direct conducts business throughout this District and throughout parts of the U.S.

1

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction over the Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant has its headquarters in this District and the wrongful conduct giving rise to this case was directed from this District.

## INTRODUCTION

5. As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

7. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

8. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

9. According to online robocall tracking service "YouMail," 4.4 billion robocalls were placed in April 2024 alone, at a rate of 146.9 million per day. www.robocallindex.com (last visited May 19, 2024).

10. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

11. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

12. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

**COMMON ALLEGATIONS**

13. Highland Health Direct operates using the d/b/a Highland Health Care.[3]

14. Defendant Highland Health Direct places solicitation calls to consumers, as per Plaintiff's experience.

15. Highland Health Direct solicits Medicare plans, including Medicare Advantage plans that are provided at a cost to the consumer:

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://dos.sunbiz.org/scripts/ficidet.exe?action=DETREG&docnum=G20000018412&rdocnum=G20000018412



16. Employee job descriptions for Highland Health Direct state that the employees are working in sales through calling. For example:

17. Oftentimes, these calls are being placed to consumers without consent, including to consumers like the Plaintiff who registered their phone numbers on the DNC.

18. According to a job review that was posted by a former employee, Highland Health Direct engages in cold calling to generate business:

---

[4] https://highlandhealthcare.com/medicare-advantage-simplified
[5] https://www.indeed.com/cmp/Highland-Health-Care/reviews

4

> **Scam**
>
> Sales Associate (Current Employee) - Deerfield Beach, FL - April 11, 2022
>
> They promise you in the job description that there is no cold calling THEY ARE LYING. You will cold call all day every day. People I was training with WALKED OUT ON THE JOB when they realized this scammy company was cold calling and using new hires to do the dirty work- don't work here unless you're desperate.[6]

19. To make matters worse, Defendant Highland Health Direct lacks a sufficient internal do not call system, causing consumers like the Plaintiff in this case to receive unsolicited telemarketing calls despite having requested that the calls stop.

20. Consumers have posted complaints directly to the Defendant through its Google profile, including:

- "I am so over these phone calls from these people I have received 25 calls in the last 2 days and all they want is your information without giving you any up front this is ridiculous blocking numbers do nothing as they are calling from many different numbers
BEWARE sounds like a scam to me and its become pure harrrassment reported them to. My phone carrier hopefully they can stop these calls .....OVER IT DONE"[7]

- "I hate repeated calls from this corp in Deerfield Beach Florida. I'm beginning to think I'd never consider talking with them b'c., one, ***they do not honor 'do not call m.'*** & two, the person who called is not a health insurance agent but a person who gathers personal info and forwards call to an agent. A scamer?? Gathering personal info? ? Who knows?
I don't trustcallers like this at all. No caller id provided on my screen caller id."[8] (emphasis added)

- "I am getting calls every day from these people. No message I don't answer and block. They keep using different numbers. Harassment at this point"[9]

- "Numerous phone calls from this company and we are on the national DO NOT CALL registry. ***STOP CALLING PEOPLE ON THE DO NOT CALL REGISTRY***."[10] (emphasis added)

---

[6] https://www.indeed.com/cmp/Highland-Health-Care/reviews
[7] https://www.google.com/search?sca_esv=345267d81bec8f30&q=Highland+Health+Care
[8] Id.
[9] Id.
[10] Id.

5

21. In response to these calls, the Plaintiff brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA, as well as an award of statutory damages to the members of the Classes and costs.

**PLAINTIFF DRAKE'S ALLEGATIONS**

22. Plaintiff Drake registered her cell phone number ending in 5545 on the DNC on June 29, 2003.

23. Plaintiff Drake uses her cell phone number for personal use only as one would use a residential landline telephone number.

24. Plaintiff Drake uses her cell phone number primarily to interact with friends and family.

25. Plaintiff Drake's cell phone number has never been associated with a business or advertised for business purposes.

26. Plaintiff Drake's cell phone number is registered to her, not a business.

27. Plaintiff Drake began receiving unsolicited telemarketing calls from Highland Health Direct to her cell phone number in April of 2024.

28. On April 2, 2024 at 9:58 AM, Plaintiff Drake received an unsolicited call to her cell phone from the Defendant, from 551-381-0809.

29. When Plaintiff Drake answered this call, an employee stated that they were calling from Highland Health Center.

30. Plaintiff Drake asked the employee what the purpose of the call was and the employee said that they were calling about Plaintiff's Medicare advantage plan.

31. The purpose of the call was to determine what coverage Plaintiff Drake currently had and to offer additional plans that would be available at a cost.

32. The employee wanted to transfer Plaintiff Drake to a licensed insurance agent.

33. Plaintiff Drake told the employee that her number is registered on the DNC and that she does not have a Medicare advantage plan. She then told the employee to remove her phone number from Defendant's call list.

34. Despite her clear stop request, Plaintiff Drake received the following unsolicited calls from Highland Health Direct:

- April 2, 2024 at 2:12 PM from 229-398-5268;
- April 3, 2024 at 9:06 AM from 231-294-4715;
- April 5, 2024 at 9:40 AM from 888-995-2389;
- April 8, 2024 at 11:29 AM from 888-858-1207; and
- April 8, 2024 at 5:15 PM from 888-210-8641.

35. All of the above calls were answered by Plaintiff Drake.

36. For each of the above calls, the callers stated that they were calling from Highland Health Center.

37. In each of the above calls, Plaintiff Drake told the callers to remove her phone number from Defendant's call list and/or quit calling.

38. Plaintiff Drake was very frustrated and felt harassed by the calls that she received from Defendant Highland Health Direct.

39. On April 11, 2024, her attorneys sent a demand for consent email with a request to stop calling to Defendant Highland Health Direct at consumerrelations@highlandhealthdirect.com.

40. Plaintiff's attorneys did not receive a response to the email that was sent.

41. On May 2, 2024 at 9:57 AM, Plaintiff Drake received another unsolicited call from the Defendant to her cell phone, from 888-865-0607.

42. When Plaintiff answered this call, an employee said that they were calling from Highland Health Center.

43. Plaintiff Drake told the caller that she has already asked the Defendant to stop calling multiple times and asked again for the calls to stop.

44. On May 8, 2024 at 3:00 PM, Plaintiff Drake received yet another unsolicited all from the Defendant to her cell phone, from 888-865-0795.

45. When Plaintiff answered this call, an employee said that they were calling from Highland Health Center.

46. As she had done previously, Plaintiff Drake told the caller that she has already asked the Defendant to stop calling multiple times and asked again for the calls to stop.

47. Plaintiff Drake has never done business with Highland Health Direct or consented to be called by them.

48. The calls were all regarding Plaintiff's Medicare advantage plan, though Plaintiff does not have and has never subscribed to such a plan.

49. The unauthorized solicitation telephone calls that Plaintiff received from or on behalf of Defendant Highland Health Direct have harmed Plaintiff Drake in the form of annoyance, nuisance, and invasion of privacy, occupied her phone line, and disturbed the use and enjoyment of her phone.

50. The unsolicited calls that Plaintiff Drake received also wasted her time, as she answered the calls and continually requested that the callers remove her cell phone number from their calling lists.

51. Seeking redress for these injuries, Plaintiff Drake, on behalf of herself and Classes of similarly situated individuals, brings suit under the TCPA.

**CLASS ALLEGATIONS**

52. Plaintiff Drake brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Classes:

**Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant Highland Health Direct called more than one time, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called Plaintiff.

**Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant Highland Health Direct called more than one time on their residential telephone number, (2) within any 12-month period (3) for substantially the same reason Defendant called Plaintiff, (4) including at least once after the person requested that they stop calling.

53. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff Drake anticipates the need to amend the Class definition following appropriate discovery.

54. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable, and Plaintiff is a member of the Classes.

55. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

   (a) Whether Defendant's conduct violated the TCPA;

   (b) Whether Defendant placed multiple calls within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each call;

   (c) whether Defendant engaged in telemarketing without implementing adequate internal policies and procedures for maintaining an internal do not call list;

   (d) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

56. **Adequate Representation**: Plaintiff Drake will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff Drake has no interests antagonistic to those of the Classes, and the Defendant has no defenses unique to Plaintiff. Plaintiff Drake and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff Drake nor her counsel have any interest adverse to the Classes.

57. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Classes and as a

whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff Drake. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## FIRST CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Drake and the Do Not Call Registry Class)**

58. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

59. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered her or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

60. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

61. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Drake and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

62. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Drake and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

63. As a result of Defendant's conduct as alleged herein, Plaintiff Drake and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

64. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**SECOND CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Drake and the Internal Do Not Call Class)**

65. Plaintiff repeats and realleges paragraphs 1-57 of this Complaint and incorporates them by reference herein.

66. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the

12

following minimum standards:

(1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

67. Defendant placed calls to Plaintiff and members of the Internal Do Not Call Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow Defendant to initiate telemarketing calls.

68. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

69. Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing her attorneys as Class Counsel;

b) An award of money damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Drake requests a jury trial.

Respectfully Submitted,

**TERI DRAKE**, individually and on behalf of all others similarly situated,

DATED this 23rd day of May, 2024.

By: /s/ *Stefan Coleman*

Stefan Coleman
COLEMAN PLLC
66 West Flagler Street
Suite 900
Miami, FL 33130
(877) 333-9427
law@stefancoleman.com

Avi R. Kaufman
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 S Dixie Hwy, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorney for Plaintiff and the putative Classes*